No. 41,909

BENJAMIN L. CARTER and HARRIET I. HARKINS, *Appellants,* v. RICHARD H. CARTER and LUCILE CARTER, his wife; MILDRED M. HIGDON; and BENJAMIN F. CARTER, *Appellees.*

(353 P. 2d 499)

Opinion filed July 2, 1960.

*Karl V. Shawver,* of Paola, argued the cause, and *Karl V. Shawver, Jr.,* of Paola, and *Myron S. Steere,* of Ottawa, were with him on the briefs for the appellants.

*William S. Bowers,* of Ottawa, argued the cause, and *B. F. Bowers,* of Ottawa, was with him on the briefs for the appellees.

The opinion of the court was delivered by

Robb, J.: This is an appeal by Benjamin L. Carter and Harriet I. Harkins, plaintiffs below, from the trial court's judgment relating to a partition, an accounting, granting Benjamin F. Carter a homestead, and other orders of the trial court including the overruling of plaintiffs' motion for new trial and denial of appointment of a receiver.

When necessary for clarity we shall refer to the parties by their first names except Benjamin F. Carter who will be referred to as:

the father. Mildred was originally named as a plaintiff in the petition but on May 5, 1959, she withdrew as such, answered, and appeared thereafter in the trial court along with the other defendants, and thus is an appellee here.

Jennie June Carter owned 480 acres of land in Franklin county at the time of her death on November 15, 1945, and on October 18, 1948, the probate court of that county, under G. S. 1949, 59-2250 and 59-2251, determined that the following persons were her heirs and were owners of the land as tenants in common: the father, widower, one half; Richard and Benjamin, sons, one eighth each; Mildred and Harriet, daughters, one eighth each. At the time of the above determination the father made no written selection of a homestead as provided in G. S. 1949, 59-2235. About four years prior to the trial, oil production was commenced on the 480 acres. Two of the seven wells were located on the 160 acres presently claimed as a homestead by the father but the entire oil royalties were divided one half to the father 'and one eighth to each child. These preliminary facts were admitted at an early stage in the proceedings and were contained in the trial court's first five findings of fact.

At the outset plaintiffs asked to inspect all documents in defendants' possession concerning transactions involving farming operations on the 480 acres since November 15, 1945, but under the limitations of G. S. 1949, 60-306, *Sixth*, we are concerned only with the years since 1954.

It would be useless and confusing to undertake to detail all of the vague and conflicting evidence that was reflected in the record but we shall refer to pertinent facts necessary for determination of the issues here involved.

The suit was commenced to partition the entire 480 acres which acreage resembled the shape of the letter "U" with the claimed homestead forming the bottom portion of the "U." An accounting was also sought of rents and profits together with an order that payments be made to those entitled thereto under such accounting.

From the record it appears that Jennie inherited some of the land and she, along with her husband, the father herein, began living on the land in 1902 or 1903 and continued to acquire more acreage in her name until she owned the entire 480 acres in question where they lived from 1908 until Jennie's death in 1945. Thereafter Richard and the father continued to live on and farm

the 480 acres together until 1951 when Richard married Lucile. After the marriage of Richard and Lucile, they lived in the home with the father. Lucile at all material times was employed at Mode O' Day in Ottawa and had a personal income. She cooked the evening meal and did the housework in the evenings. After Jennie's death, the father did some of the work but at the time of the trial Richard was doing most, if not all, of the work.

Mildred, Richard, and the father set up a claim of a homestead for the father as to the 160-acre tract with home improvements. They also requested partition but only of the remaining 320 acres and denied the right of Benjamin and Harriet to demand an accounting for 1953 or prior years.

Benjamin and Harriet, for reply, alleged estoppel, waiver, and abandonment on the part of the father to assert any right of homestead against his co-tenants by reason of his failure to comply with G. S. 1949, 59-2235 and further alleged that by withholding Jennie's will, Richard and the father were barred from any right in the estate.

From the evidence, the trial court made these pertinent findings of fact:

"6. The landlord's share of the income from the 320, being that land exclusive of the land claimed as a homestead, was:

| Year | Amount | Less Taxes | Net |
|------|--------|------------|-----|
| 1954 | $1,000.00 | $226.25 | $773.75 |
| 1955 | 1,600.00 | 252.20 | 1,343.80 |
| 1956 | 1,600.00 | 244.45 | 1,355.55 |
| 1957 | 1,450.00 | 284.78 | 1,165.22 |
| 1958 | 900.00 | 302.17 | 597.83 |
| "Totals | $6,550.00 | $1,299.85 | $5,236.15 |

"7. The defendants spent $200.00 in building a pond in 1956 and should receive credit accordingly.

"8. The income for said 320 acres for the year 1959 has not been taken into account and is yet to be determined.

"9. That Richard H. Carter has resided in said home since November of 1945. That he was married in August of 1951 and since that date they have continued to reside in said home."

The trial court also made the following conclusions of law:

"1. Benjamin F. Carter is entitled to a homestead in the amount of 160 acres which he now claims and the same is set aside as his homestead.

"2. The remaining 320 acres will be partitioned as provided by law.

"3. The plaintiffs, Benjamin L. Carter and Harriet I. Harkins, are each allowed a judgment against Richard H. Carter and Benjamin F. Carter, jointly,

for one-eighth of the landlord's share for the years 1954 through 1958, in the amount of $629.52."

The trial court incorporated into its journal entry of judgment the findings of fact and conclusions of law. Its judgment held the plaintiffs to be the owners of the 480 acres as tenants in common, that the interest of each of the four children was an undivided one eighth and that of the father an undivided one half; that the 160 acres was the homestead of the father and was not subject to partition at this time and the remaining 320 acres should be partitioned according to law.

The trial court further ordered that Benjamin and Harriett each have judgment against Richard and the father jointly in the sum of $629.52.

The application of Benjamin and Harriet for appointment of a receiver pending the appeal to this court was overruled.

Plaintiffs assign a number of specifications of error but only three questions are raised and they will be discussed in the order presented.

No. 1. Did the court err in the admission of erroneous evidence?

This question refers particularly to the testimony of Richard who within a few days next preceding the trial had made some notes from memory due to the fact that the farm records he and his father had in their possession had disappeared from the bedroom of their home. These notes related to the crops, income, expenses, etc., of the farming operations and Richard had also made some mathematical computations of market prices as best he could from memory. This brings us face to face with some of the perplexities which confronted the trial court but the court below was in a somewhat better position than is this court on appellate review because it could observe the demeanor of the witnesses, maps were available for use, and references could be made to actual papers and figures which are totally lacking in the record before us. All we have is the abstract of the record made by the court reporter as to the testimony of the witnesses.

The evidence is clear that wheat, corn, oats, barley, maize, hogs, cattle, hay, alfalfa, milo, kafir, soy beans and pasture were involved in the farming operations. This was true not only of the 480 acres but also on acreages that Richard owned and other tracts that he leased from time to time. Some years there would be very little production and there would be seed to buy and expenses incident

to harvesting the crops. Finally, there was testimony as to the market price of the crops produced from which accounting the trial court could determine the amounts due Benjamin and Harriet.

Counsel for plaintiffs made timely and repeated objections to Richard's use of the memoranda which brought an immediate explanation from Richard's counsel that the memoranda had been compiled just a few days before trial after consideration and recollection over the past five years of farming activities and the income derived therefrom, and that the purpose for doing so was to avoid delay in the trial. From the record this appears to have convinced the trial court that the notes were proper for refreshing Richard's memory and under the court's equity powers, the objection was overruled.

Counsel for plaintiffs direct attention to a most exhaustive annotation (250 pages) in 125 A. L. R. 20, wherein our case, *McNeely v. Duff*, 50 Kan. 488, 31 Pac. 1061, is cited at page 209. The following appropriate rule of law was stated in the *McNeely* case:

"A witness may refresh his recollection by reference to any memoranda relating to the subject-matter, to which his attention is directed on the stand, whether the memoranda are in such form as to be competent as independent evidence or not, and then testify, providing he then has any independent recollection of such subject-matter." (Syl. ¶ 1.)

Cited also in 125 A. L. R. at page 108 is the later Kansas case of *Garden City v. Heller*, 61 Kan. 767, 60 Pac. 1060, which contained this rule:

"Where certain voluminous memoranda as to the number and kinds of trees planted under a contract with a city have been made by witnesses who at the trial have no independent recollections of the facts, but can testify that they knew of the truth and accuracy of the statements in the memoranda when they were written, and that they were correctly written, both the testimony of the witnesses and the memoranda may be received in evidence." (Syl. ¶ 3.)

Richard, Mildred and the father rely on the *McNeely* case and submit the additional citation of *Rigdon v. Farmers Alliance Ins. Co.*, 122 Kan. 136, 251 Pac. 631, where numerous small items burned in a fire were listed and valued by the assured. The court there held that:

"In an action on a fire insurance policy to recover for household goods destroyed by fire, a witness, for the purpose of refreshing his memory, may use an inventory of the articles burned to assist him in naming those articles and in stating their value." (Syl. ¶ 1.)

Recently in *State v. Cook,* 180 Kan. 648, 305 P. 2d 851, this court said:

"In *Wilkes v. Coal Co.,* 95 Kan. 493, 148 Pac. 768, it was held that a witness may refresh his recollection from a memorandum made under his direction, and in *Cockrill v. Railway Co.,* 90 Kan. 650, 136 Pac. 322, it was held that the report of a commission company was competent and might be used by a shipper to refresh his recollection of the sums received for the animals composing the shipment, stated to be as he remembered it, the weight and force of the testimony being for the jury." (p. 650, 651.)

Applied to our present case, the above rule means that the weight and force of the testimony would be for the determination of the trial court, the trier of the facts herein. The contention of plaintiffs as to the above is not sustained by the decisions of this court and we need not discuss conflicting rules of other jurisdictions.

Question No. 2 is, Did the trial court err in rendering a proper accounting?

All this court could do under this contention of plaintiffs would be to reexamine the evidence in an effort to arrive at a different amount owing to them than that determined by the trial court. This we cannot and will not do. The same conclusion has been stated so frequently in other cases no citation of authority is necessary.

The final question is, Did the trial court err in setting aside the homestead of 160 acres to the father?

In support of their contention of error, plaintiffs rely on G. S. 1949, 59-2235, the so-called "homestead statute," which in substance provides that after the inventory and appraisement are filed, the surviving spouse may petition the court to set apart the homestead and upon proof, the court shall set aside the homestead which shall be delivered by the executor or administrator to the surviving spouse, and shall not be treated as assets in his custody but the title thereto shall be included in the final decree of distribution.

In commenting on the homestead statute, this court in *Meech v. Grigsby,* 153 Kan. 784, 113 P. 2d 1091, had this to say:

"We think it was the intention of the lawmakers under the new probate code to require the widow to promptly select and describe the ground she claims as a homestead." (p. 788.)

The above case along with *Cole v. Coons,* 162 Kan. 624, 178 P. 2d 997, was cited in support of plaintiffs' contention. Without detailing these two cases, it is apparent the issues therein concerned were entirely dissimilar to the issues in our present case.

The 1948 determination of Jennie's heirs, which was commenced

by the father, was not a full probate of her intestate estate. The heirs and their individual interests were determined by the probate court under G. S. 1949, 59-2250 which provides that whenever any person has been dead for more than a year and has left property and there has been no administration of the estate or determination of descent of the property, any person having or claiming an interest therein may petition the proper probate court to determine its descent.

In support of the correctness of the trial court's order granting homestead rights, defendants rely on *Jardon v. Price*, 163 Kan. 294, 298, 299, 181 P. 2d 469, and *Wright v. Rogers*, 167 Kan. 297, 301, 205 P. 2d 1010, where the intent and purpose of G. S. 1949, 59-2250 and the ultimate ends to be accomplished thereby are clearly and definitely pronounced.

The Jardon case held:

"A decree of descent under the provisions of G. S. 1945 Supp. 59-2250 does not create title but merely declares who has acquired the title of the decedent under the law of intestate succession. The function of the statute is not to determine claims or controversies affecting the distributive share which would otherwise pass under the law of intestate succession." (Syl. ¶ 2.)

Included in the Wright case was this statement:

"Finally appellees point out that under the probate code . . . heirs are permitted to wait for more than a year after the death of their intestate decedent without administration and then have the descent to his property determined in a short form probate proceeding. Quite true. It does not follow, however, as they insist, that under this section of the statute [59-2250] they are authorized to litigate as among themselves their respective interests in the estate of their ancestor. Indeed we have held to the contrary." (p. 301.)

More recently we held in *Snedeger v. Schrader*, 183 Kan. 725, 332 P. 2d 586, that:

"Under the provisions of G. S. 1949, 59-2250 and 2251, a decree of descent does not create title, but merely declares who has acquired the title of decedent. In other words, the function of the decree is to declare the title which accrues under the law of intestate succession. It releases the title of the heirs from the condition of administration and furnishes the heirs with legal evidence to establish title." (Syl. ¶ 2.)

See, also, 3 Bartlett's Kansas Probate Law and Practice, rev. ed., § 1356, pp. 232-234.

In view of these authorities, we conclude the father was not by statute or otherwise at any time previous to the filing of the answer herein required to request the setting aside to him of the

160-acre homestead previously included in the land owned by Jennie. Therefore, the father did not waive nor was he estopped from claiming as a homestead the home where he had lived for so many years.

The inevitable result is that we must conclude the trial court was correct in its ruling allowing Richard to refresh his recollection from the memoranda, in its determination of the amounts due to plaintiffs from defendants by reason of the cause of action based on an accounting, and in its decree setting aside to the father the homestead of 160 acres previously included in land owned by his deceased wife during her lifetime.

Judgment affirmed.