ALICE T. SAWIN, *Appellant,* v. M. E. OSBORN et al.,
*Appellees,* and SARAH O. ORANS et al., *Appellants.*

No. 17,786.

SYLLABUS BY THE COURT.

1. DEATH OF HUSBAND—*Wife Entitled to Homestead.* Where a
husband and wife occupy real estate owned by him as a home-
stead his death will not operate to deprive the wife of the
homestead exemption although she may be the sole surviving
member of his family, nor do the statutory provisions re-
garding the descent of the property to the surviving widow
operate to make her homestead subject to the payment of her
husband's debts.

2. PARTITION—*Owelty—Lien.* In order to make an equitable
partition of property it is competent for the court to require
one party who has been allotted a share of greater value than
was allotted to another to pay owelty to such other and thus
equalize the shares of the respective parties, and if it is not
practicable to pay such owelty at once the court may charge
the amount of it as a lien on the excessive allotment.

3. HOMESTEAD—*Partition—Occupancy by Widow.* It was not
inequitable or illegal to allow the widow to occupy the resi-
dence on the share allotted to her cotenants for a reasonable
time and until a building was removed and a home made on
the portion allotted to her.

Appeal from Saline district court.   Opinion filed
October 12, 1912.   Affirmed.

*David Ritchie,* of Salina, for the appellants.

*Z. C. Millikin,* of Salina, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.:   This was an action for the parti-
tion of two lots in Salina which had been owned by
Hugh Osborn and occupied by him and his family as a
residence and homestead.   He died intestate and left
surviving him M. E. Osborn, a wife by second mar-
riage, and six children by a former marriage who had
reached majority and left his home.   M. E. Osborn,

Sawin v. Osborn.

the surviving widow, had children by a former marriage, two of whom were minors, who lived in the Osborn home before the death of the intestate and still live there with their mother. Hugh Osborn died owing debts aggregating about $500, and it became a question whether the home or the one-half to be allotted to the widow was subject to the payment of the debts of the deceased. In the action of partition commissioners were appointed ·to appraise the real estate as a whole, and also to appraise the west fifty feet of the tract separately from the east seventy feet thereof, and also to make a separate appraisement of a barn which was located on the back end of the west tract. The commissioners reported that the real estate was worth $2600. They appraised the west fifty feet, exclusive of the barn, at $1550, and the barn alone at $280, and the east seventy feet of the tract at $770. It was found that the east tract could not be divided without manifest injury, and the court awarded the widow the east seventy feet of the tract and the barn which was on the west fifty feet, and in order to equalize the shares charged the fifty feet with $250 which her cotenants were required to pay. She and her children were occupying the house on the west tract and the court gave her the right to occupy that house until sixty days after the payment of the $250 and a reasonable time, not exceeding thirty days, after the payment of the money to remove the barn to the east tract and establish thereon a home. The court adjudged that the portion set off to the widow was her homestead and was not subject to the payment of the debts of the intestate nor of her own debts. The other heirs of the intestate appeal and claim that the judgment giving the widow a share free from the debts of the intestate was erroneous and that there was error in placing a lien of $250 on their share as well as in allowing her to occupy the tract allotted to them until the lien of $250 was paid. Did one-half of the property of Hugh Osborn,

which was a homestead, descend to his surviving widow free and clear of all debts of the intestate?

It is insisted that the question is answered by the provisions of the statute of descents and distributions, one of which declares that half of the real estate owned by the husband during marriage, which has not been sold on execution or other judicial sale and not necessary for the payment of debts, shall be set apart to the surviving widow. (Gen. Stat. 1909, § 2942.) The effect of this statute, it is said, is that only such real estate as is not necessary for the payment of debts descends. There would be room for the interpretation invoked if this provision stood alone. The constitution, which is the paramount law, provides that a homestead shall be exempted, and the statute of descents and distributions itself provides that a homestead shall be not only exempt from the payment of debts but shall also be exempt from distribution under any of the laws of the state, and it further provides that such homestead shall constitute the absolute property of the widow and children. (Gen. Stat. 1909, § 2936.) That the legislature did not overlook the homestead exemption nor attempt to fasten an obligation for the payment of debts of an intestate upon it is shown in the opening provision of the act. In substance, it provides that after allowing the homestead to the widow and children the remainder of the real estate of the intestate not necessary for the payment of debts shall descend as provided in the subsequent provisions of the act. (Gen. Stat. 1909, § 2935.) This, as well as other provisions of the act, indicates that it is only the property remaining after exemptions are taken out which is subject to distribution or to the payment of debts. Even if the legislature had undertaken to do so it could not have diminished or limited the constitutional exemptions. The questions presented here were fully considered in *Cross v. Benson,* 68 Kan. 495, 75 Pac. 558, and *Weaver v. Bank,* 76 Kan. 540, 94 Pac. 273. In these it was de-

termined that if a husband and wife occupy a tract of land as a homestead she is to be regarded as the family of the owner within the meaning of the constitutional provision, and that when the exemption attaches it is not lost by the death of the husband and so long as she occupies the homestead so given her she will hold it free from the claims of creditors. It was further held that the homestead right having been acquired will persist in favor of a single person, and that the surviving husband or wife who continues to reside on the homestead estate is entitled to the shelter of the home exempt from the claims of creditors. Although the doctrine in these cases is challenged the court is entirely satisfied with the rules laid down and the reasons on which they were based. The trial court rightly held that the real estate set apart as the homestead of appellee is not subject to intestate's debts or those contracted by herself.

The next contention is that the court had no authority to require appellants, who were given the west tract, to pay $250 or to charge their allotment with a lien for that amount. The claim is that if the property is not susceptible of division in equal parts the whole must be sold and a division of the proceeds made according to the plan prescribed by statute. The code provides that the court shall ascertain the interests of the respective parties and that partition shall be accordingly made if it can be done without manifest injury, but if partition can not be made the property is to be valued and appraised and if none of the parties elect to take it at the valuation made it is then to be sold and the proceeds apportioned among the parties according to their respective interests. (Civ. Code, §§ 639-647.) While the remedy of partition is statutory the court in enforcing it has substantially the same powers as were exercised by courts of chancery under the former equity practice. It is specifically provided that in making a partition "the court shall have full power to make any

order not inconsistent with the provisions of this article that may be necessary to make a just and equitable partition between the parties, and to secure their respective interests." (Civ. Code, § 648.) Under this provision the court may partition the property on the broad principles of equity which govern courts in the administration of justice. Under it an account may be taken and an allowance made for the care and benefit of property, such as the payment of taxes and the discharge of liens, and also an account of rents and profits as well as for use and occupancy of the premises may be made. (*Sarbach v. Newell*, 28 Kan. 642; *Sarbach v. Newell*, 30 Kan. 102, 1 Pac. 30; *Phipps v. Phipps*, 47 Kan. 328, 27 Pac. 972; *Hazen v. Webb*, 65 Kan. 38, 68 Pac. 1096; 30 Cyc. 231.) The theory of the law is that the property will be partitioned among the parties where it can be equitably done. It is not to be sold and the proceeds divided except where it is not susceptible of an equitable partition. The court is vested with the discretion and power to determine whether it is equitable and practicable to give each his share, and it may, for good and sufficient reasons, allot particular portions of the property to any one of the parties. (Civ. Code, § 639.) In making divisions along natural and practical lines the allotments can not always be made of equal area or value, and when an allotment is made to a party which is in excess of his share the court may require him to pay such excess, which is called owelty, to the other cotenants. Where owelty is required and immediate payment of the same is not practicable the amount may be charged as a lien against the excessive allotment. In *Updike v. Adams*, 24 R. I. 220, 52 Atl. 991, the point was made that the statute having provided for a sale of property it should be regarded as a substitute for the general rule of equity requiring payment of owelty. The court, however, held that the statute did not operate as a limitation, or abrogation, of the general powers of equity but only added to them

Sawin v. Osborn.

the power of sale where payment of owelty was im-
practicable.  In the opinion it was said:

"It is obviously impossible, in many cases, to divide
an estate into parts of exactly equal value.  Differences
in buildings, location, water, wood, fertility, and other
incidents affecting value, frequently need to be ad-
justed by a payment of money.  It would be a greater
stretch of power to require a large estate to be sold as
a whole, where a proportionally small sum is required
to meet such an adjustment, than to require the pay-
ment of such a sum.  We can not think that the statute
was intended to abrogate the power in such cases, and
therefore that it is not in substitution for the general
power, but in addition to it, to cover cases in which a
payment of owelty is impracticable; for example, the
division of a single house and lot between several
parties."  (p. 221.)

Other authorities bearing upon the question are:
*Lynch v. Lynch,* 18 Neb. 586, 26 N. W. 390; *Bennett v.
Bennett,* 84 Miss. 493, 36 South. 452; *Jameson v. Hay-
ward,* 106 Cal. 682, 39 Pac. 1078; *Boley et al. v. Skin-
ner et al.,* 38 Fla. 291, 20 South. 1017; *Merrill v. Dur-
rell,* 67 N. H. 108, 36 Atl. 613; 21 A. & E. Encycl. of L.,
1170-1179; 30 Cyc. 261.

The partition herein giving the appellee the east
seventy feet valued at $770, the barn-house at $280,
which was intended to be fitted up as a residence, and
an owelty of $250, amounting in the aggregate to
$1300, constitutes one-half of the estate, the widow's
share, and appears to be a fair and equitable division.
It is one well within the power and discretion of the
court, and so also was the order allowing her to occupy
the house on the other tract for a reasonable time until
she could remove the barn-house and fit up a home on
the part allotted to her.

The judgment is affirmed.