(836 P.2d 1212)

No. 65,882

EDWARD P. CARNES, CHERI E. CARNES, MICHAEL D. FOSTER and ELENA WAHBEH FOSTER, *Appellants/Cross-appellees,* v. MEADOWBROOK EXECUTIVE BUILDING CORPORATION, *Appellee/ Cross-appellant,* LARRY A. SMITH, CARLE BAKER, JR., and MICHAEL G. KOONTZ, *Appellees.*

Opinion filed August 7, 1992.

*Randolph G. Willis* and *Jason R. Brown,* of Watson, Ess, Marshall & Enggas, of Olathe, for appellants/cross-appellees.

*Laurence M. Jarvis,* of Laurence M. Jarvis, Chartered, of Kansas City, for appellee/cross-appellant.

Before GERNON, P.J., BRAZIL and LEWIS, JJ.

BRAZIL, J: Edward P. Carnes, Cheri E. Carnes, Michael D. Foster, and Elena Wahbeh Foster (plaintiffs) appeal the decision in favor of Meadowbrook Executive Building Corporation, Larry A. Smith, Carle Baker, Jr., and Michael G. Koontz (defendants) at the close of a bench trial on their claims of breach of fiduciary duty, fraud, outrage, intentional interference with a business relationship, and indemnification. Meadowbrook Executive Building Corporation cross-appeals certain aspects of the decision in its favor on its counterclaims and also has again moved this court to dismiss plaintiffs' appeal on grounds of acquiescence.

We agree with this court's denial of Meadowbrook Executive Building Corporation's motion to dismiss plaintiffs' appeal based on a claim that plaintiffs acquiesced in the judgment. We reverse the trial court and remand for a new trial to a jury.

At the center of the present litigation, and also in at least five previous lawsuits, is a 28-unit office building operated pursuant to a declaration of condominium under the title of Meadowbrook Executive Building Corporation (MEB), a nonprofit organization. Edward P. Carnes and Michael D. Foster controlled a majority of votes in MEB. They both had extensive background in the real estate business. Carnes had been involved in the development of MEB, including the preparation and execution of the declaration of condominium and the organization bylaws, as well as having managed the building's operations from 1983 to 1986. The other named defendants were owners of units in MEB.

Considering the amount of litigation involving these parties, they obviously agree on very little. However, it is undisputed that the underlying reason for this action is the acquisition of control of MEB by the other named defendants. Plaintiffs allege that the control of MEB was acquired through fraud and that

their other causes of action (and damages) follow as a result. The parties are familiar with the history and the facts in this litigation, and it is unnecessary to repeat them here.

1. Acquiescence.

MEB filed a motion to dismiss based on its claim of acquiescence by plaintiffs in the lower court's judgment. This motion was denied with leave to reassert the issue in defendants' appellate brief. The judgment below, *inter alia,* stated the provision for late fees in the declaration of condominium was void as a matter of public policy. After the judgment, MEB filed a small claims suit to recover dues and late fees not paid by plaintiffs for a period of time that was not covered by the judgment. MEB won in small claims court, but plaintiffs appealed to the district court. Plaintiffs successfully prevailed on the issue of late fees by arguing the judgment in this case was res judicata on this issue of late fees. Defendants assert this is acquiescence.

"As a general rule, anything which savors of acquiescence in a judgment cuts off the right of appellate review." *Tice v. Ebeling,* 238 Kan. 704, 713, 715 P.2d 397 (1986). Although voluntary compliance with the judgment, *i.e.,* using the judgment as an affirmative defense in subsequent litigation, could indicate acquiescence, there is an exception "where a judgment or decree involves distinct and severable matters, demands, or issues, [and there is] an acceptance of the burdens or benefits of one or more parts thereof." *First Nat'l Bank in Wichita v. Fink,* 241 Kan. 321, 324, 736 P.2d 909 (1987).

Acquiescence and the exception to the rule were discussed in *McDaniel v. Jones,* 235 Kan. 93, 95, 679 P.2d 682 (1984). McDaniel and Jones entered into an arrangement in the 1960s that transferred property owned by Jones to McDaniel, with Jones retaining possession and responsibility to make all payments on the existing mortgage, along with tax and insurance payments. After an agreement between McDaniel and Jones, that the court later ruled was an equitable mortgage, became controverted, McDaniel filed a quiet title action. The court ruled fee title belonged to Jones, subject to liens for monies expended by McDaniel and the federal tax liens that were subordinate to McDaniel's lien. 235 Kan. at 100.

Jones appealed from all adverse rulings. McDaniel appealed the failure to find that McDaniel had fee simple title. The United States appealed the subordinate priority assigned its lien. After judgment, McDaniel sought a foreclosure sale of the property. Jones filed an application to stay the sale pending the appeal. The United States opposed Jones' application. The court denied Jones' request, and the sale was consummated. Jones fought the confirmation of the sale, but the court approved it. Jones then redeemed the property. The court impounded the proceeds pending the outcome of the appeal. 235 Kan. at 100-01.

Jones asserted the action by McDaniel in pursuing the sale of the property, the action by the United States in opposing the stay of the sale proceeding, and both parties' opposition to the effort by Jones to have the court deny the confirmation was acquiescence. 235 Kan. at 101. The Kansas Supreme Court ruled McDaniel's action in pursuing the sale was an implied recognition of and acquiescence in the trial court's finding of an equitable mortgage. 235 Kan. at 102. McDaniel's right to appeal was therefore cut off. 235 Kan. at 103.

The United States, however, only contested the priority of liens assigned by the court. The Supreme Court felt this was a distinct and severable part of the judgment "involv[ing] only the respective rights of the United States and [McDaniel]." 235 Kan. at 104. The result on appeal of the issue of priority of liens would affect in no way the right to foreclose on the property to satisfy the judgment in favor of McDaniel or the United States. The appeal only determined who would get the proceeds of the sale. 235 Kan. at 104.

The denial of late fees is a distinct and severable part of the judgment below. Plaintiffs seek a new trial on the claims they raised below. The use by plaintiffs of the judgment as an affirmative defense falls within the exception recognized by *Fink* and *McDaniel* and does not bar the appeal.

2. Denial of jury trial.

Plaintiffs argue that the trial court erred in denying their request for a jury trial. The original petition, filed in August 1987, included both legal and equitable claims for relief, and plaintiffs did not ask for a jury trial. MEB filed an answer and then a

counterclaim, respectively, and did not request a jury trial. In January 1988, plaintiffs added more legal claims by amending their petition and again did not request a jury trial. After being granted an extension to file their answers, each of the defendants filed an answer seeking a jury trial for "issues so triable."

At a hearing in July 1989, counsel for defendants, in discussing a "motion to align parties," stated the purpose of the motion was to "make it easier for a jury." The judge responded, "Just a moment. What makes you think this is a jury matter?" The court went on to state, "This is an equitable proceeding, starting out as a partnership accounting, and there is no jury trial." Plaintiffs assert they presented to the court and defendants' counsel, at that hearing, a pretrial questionnaire that included a request for jury trial. The record reflects this document was filed with the court in December 1989.

A journal entry purporting to be a pretrial order was also filed in December 1989. The order noted that meaningful discovery had been completed and set deadlines for submitting requests for admissions, filing motions for summary judgment, and exchange of witness and exhibit lists. It granted plaintiffs' motion to amend their petition and ordered that plaintiffs furnish an itemization of damages. Finally, it set a trial date in April 1990. It did not state whether the trial was to be to a jury or to the court, and there is no reference to plaintiffs' jury request or to their pretrial questionnaire. More will be said about the pretrial conference/pretrial order later in this opinion.

Again, several weeks before trial, plaintiffs requested a jury. The court replied: "The Court ruled a long time ago that this is an accounting procedure and it is equitable and there wouldn't be a jury trial." After argument on the matter by both counsel, the court stated: "Counsel, let me assure you that this case has never been scheduled for jury trial." The court then stated: "The position of the parties sometimes moves around like mercury in the palm of your hand." The court restated its position that "[t]his case has never been a jury case. This case is not a jury case. This case will not be a jury case. The matter is set for trial." Finally, five days before trial, plaintiffs filed an amended petition as permitted by the court in its purported pretrial order, which included a demand for jury trial. The case was tried to the court.

Section 5 of the Bill of Rights of the Kansas Constitution, as well as. K.S.A. 60-238, provides the right to a jury trial is "inviolate." See *Kansas Malpractice Victims Coalition v. Bell,* 243 Kan. 333, 342, 757 P.2d 251 (1988). Plaintiffs' arguments are that they were entitled to a jury trial because their claims were legal and not equitable in nature; that the defendants requested a jury trial also, and once requested it cannot be withdrawn without written consent of all parties (K.S.A. 60-238[d]); and that in no way did they waive their right to a jury trial. We agree.

The determination of whether the right to a jury trial applies "is whether the essential nature of the action is grounded on equitable rights." *Karnes Enterprises, Inc. v. Quan,* 221 Kan. 596, 600, 561 P.2d 825 (1977). The issues present in "the pleadings or as modified by the pretrial order" are used to ascertain the nature of the proceeding. 221 Kan. at 600. This should occur after discovery has been completed. 221 Kan. at 601.

The original pleadings indicate this suit began as one sounding in equity. Of the claims made by plaintiffs, three of the four were for equitable relief (appointment of receiver, injunction, and an accounting). The sole legal claim, breach of fiduciary duty, was not accompanied by a request for jury trial. The demand for jury trial must be made in writing, at any time after the litigation begins, but not later than 10 days after the service of the last pleading. It may be included in the pleading. K.S.A. 60-238(b).

Plaintiffs' equitable claims were actually abandoned at a hearing in open court on May 11, 1989. Their abandonment of equitable claims is corroborated, and a written request for jury was included in the pretrial questionnaire, which was allegedly submitted to court and counsel in July 1989 and filed in December 1989.

Based on the record before us, defendants filed timely answers to the first amended petition and each requested a jury. Those requests were never withdrawn. Once a timely request is made, it may not be withdrawn unless all parties agree in writing. K.S.A. 60-238(d). Prior to any alleged pretrial conference/pretrial order, plaintiffs had withdrawn all equitable claims and had requested a jury. Their last request was made five days before trial. They were entitled to a jury, and they did nothing that would constitute a waiver of their right to a jury. The trial court erred in denying a jury trial and proceeding with a trial to the court.

### 3. Pretrial conference.

The jury trial issue, as well as most if not all of the other alleged trial court errors, could have been avoided with a complete pretrial conference resulting in a complete pretrial order. In *Oller v. Kincheloe's, Inc.,* 235 Kan. 440, 448, 681 P.2d 630 (1984), the court stated:

"The Kansas Code of Civil Procedure contemplates utilization of the rules for discovery and a pretrial conference to formulate the ultimate issues of both fact and law to be determined in the case. See K.S.A. 60-216 and Supreme Court Rule 140 [1991 Kan. Ct. R. Annot. 115]. Under the Kansas procedure, a pretrial order made pursuant to K.S.A. 60-216 supersedes the pleadings and controls the subsequent course of an action unless modified by the court to prevent manifest injustice. A pretrial order which specifies the issues to be tried supersedes and replaces the pleadings. *Herrell v. Maddux,* 217 Kan. 192, 535 P.2d 935 (1975)."

K.S.A. 1991 Supp. 60-216 lists seven things that should be considered at the conference. Rule 140 is even more specific in listing seventeen procedural steps to follow, among which are:

"(1) Plaintiff will state concisely his factual contentions and the theory of his action.

(2) Defendant will state concisely his factual contentions and the theories of his defenses and claims for relief.

(3) The court will rule upon any proposed amendments.

(4) Court and counsel will confer as to matters not disputed and request will be made for admissions and stipulations.

. . . .

(7) The court will rule on any motions for dismissal, judgments on pleadings, or summary judgment.

(8) Counsel will state if a jury is requested, if a jury of less than twelve (12) will be accepted, and time required for trial.

. . . .

(11) The issues of fact will be stated by the court.

(12) The questions of law will be stated and the court will rule thereon." 1991 Kan. Ct. R. Annot. 115-16.

The only indication of a pretrial conference is the journal entry filed December 6, 1989, referencing a discovery conference held on November 14, 1989. The journal entry is then referred to as a pretrial order, but it falls far short of the order contemplated by the statute or Supreme Court rule.

Had the procedural steps enumerated above been followed by the court at the November 1989 hearing, it would have been clear to the court that no equitable claims remained and that the

parties were entitled to a jury trial. If the court had used that same hearing to examine plaintiffs' pretrial questionnaire instead of apparently considering a previously filed petition, it would not have ruled that plaintiffs had failed to plead fraud with particularity as required by K.S.A. 1991 Supp. 60-209(b). Also, the alleged failure to consider plaintiffs' request for admissions and failure to consider plaintiffs' claim for breach of fiduciary duty are matters that should have been addressed in a pretrial conference.

We do not wish to be overly critical of the court. This case is but one of at least six cases involving these same parties. The facts and the theories of law underlying the various causes of action were confused and complex, causing the court to state during the course of the trial: "This case has been a procedural disaster."

A similar problem was addressed by our Supreme Court in *Boydston v. Kansas Board of Regents,* 242 Kan. 94, 100-01, 744 P.2d 806 (1987):

"The unsettled and confused status of this case on the day of trial was due in large part to the failure to hold a pretrial conference and file a subsequent pretrial order. Counsel failed to agree on the proposed pretrial order prior to trial. Both counsel and the trial court must share the responsibility for the breakdown in the pretrial procedure and resulting confusion: counsel, for not requesting a pretrial conference or court intervention when the proposed pretrial order could not be agreed to; the trial court, in failing to hold a pretrial conference or in making sure that counsel submitted an agreed-to pretrial order within a reasonable time prior to trial. The primary purposes of a pretrial conference are to reduce, if not eliminate, surprise from the trial and to determine exactly what issues are to be tried and what procedures are to be followed. In *Tillotson v. Abbott,* 205 Kan. 706, 709, 472 P.2d 240 (1970), this court stated:

'The pre-trial conference and the order entered thereon are an important part of the procedural process. They are provided to acquaint each party in advance of trial with the factual contentions of the opposite parties as to matters in dispute. . . .'

In all but the simplest cases, reason and common sense dictate that a pretrial conference be held within an appropriate time prior to trial, and a pretrial order be prepared and filed, as required by Supreme Court Rule 140 [1991 Kan. Ct. R. Annot 115]."

On remand for a new trial, we strongly recommend that counsel cooperate with the court in holding a meaningful pretrial con-

ference, resulting in a pretrial order that can serve the court, counsel, and litigants in obtaining a fair trial on all the relevant issues.

4. Damages.

At the conclusion of the bench trial, the court found that the damages claimed by plaintiffs were remote, speculative, and conjectural. We need not address this issue as it can only be determined after the evidence has been presented in the new trial.

5. Prior settlement agreement.

In Case No. 85-C-7174, the parties entered into a settlement agreement on April 23, 1987, less than four months prior to the filing of the present lawsuit. The agreement provided:

"The parties hereto do hereby release each and all parties hereto, their agents, assigns, attorneys, and successors, from any and all liability, including, but not limited to, any liability for costs or damages associated with the litigation herein or any other costs or damages arising or accruing unto them or each of them as a result of any of the actions or facts enumerated in the above-referenced case . . . 85C7174, and also . . . 86C191."

A case pending between Foster and Baker was specifically exempted from the release and then later dismissed with prejudice. Defendants argue that at least some of the facts pled as part of the claims asserted in the present case are the same as those facts pled in the cases the release covers. In its decision, the trial court expressly declined to reach this issue because the other findings were dispositive. This issue will need to be addressed on remand.

6. Counterclaim.

MEB filed a motion to modify the trial court's decision. After the motion was denied, MEB filed a notice of cross-appeal.

Defendants argue the court erred in adjusting the relief awarded MEB on its counterclaim on equitable grounds. This affected the interest rate on the judgment, the assessment of legal fees, and the late fees. The first two items were adjusted, and the late fees were found to be void as a matter of public policy. "A court of equity is not obliged to render the specific relief prayed for but may make such a decree as justice demands, under all the facts and circumstances as disclosed by the evidence." *Kline v. Orebaugh,* 214 Kan. 207, 211, 519 P.2d 691 (1974). In

regards to the determination of interest rates and the date of accrual, the court said it made its decision "as a matter of equity by virtue of the ongoing lack of clean hands on the part of all these parties in all their dealings with each other." As the plaintiffs note, the setting of attorney fees is within the discretion of the trial court. *Dickinson, Inc. v. Balcor Income Properties Ltd.,* 12 Kan. App. 2d 395, 401, 745 P.2d 1120 (1987), *rev. denied* 242 Kan. 902 (1988).

The setting of the date of accrual of the interest and the adjustment of attorney fees are well within the equitable power and discretion of the court. The rate of interest set and the late fees ruling are not.

The court set the postjudgment interest rate at "14% to the date of the voluntary [partial] payment made to the Clerk" and allowed MEB "the interest earned on the account with the Clerk thereafter." The declaration of condominium set a contractual rate of interest at 14% per annum. MEB argues the rate specified in the agreement should continue until full payment is made, as stated in K.S.A. 16-205(a).

*Atchison County Farmers Union Co-op Ass'n v. Turnbull,* 241 Kan. 357, 362, 736 P.2d 917 (1987), is a case where our Supreme Court addressed the "overriding" of statutes on equitable grounds. The question asked was "whether the legislature has made a statement of public policy which prohibits the trial judge from overriding the statutory law and applying equitable principles." 241 Kan. at 362. In *Turnbull,* the public policy involved was the encouragement of cooperative marketing associations. 241 Kan. at 363.

Here, the public policy is the legislature's recognition that a party is entitled to the bargained-for interest rate until paid in full. K.S.A. 16-205(a). The trial judge lacked the power to override this statute on equitable grounds.

The imposition of late fees is not the subject of legislative recognition like the bargained-for interest rate. The trial court did not rule on the late fees on equitable grounds but instead found the fees void as a matter of public policy. The judge did not articulate the specific public policy involved. " 'Public policy' is that principle of law which holds no individual can lawfully do that which has a tendency to be against the public good." 241

Kan. at 362. In light of the widespread use of late fee provisions in a variety of contracts, *e.g.* apartment leases and installment lending agreements, we know of no public policy reason to hold this particular late fees provision void. On remand, should there be a money judgment to any party, the trial court should follow K.S.A. 16-205(a) in computing interest. Further, should the trial court make holdings based on public policy, the court should state that public policy with specificity.

Reversed and remanded for a new trial to a jury.