NOT DESIGNATED FOR PUBLICATION

No. 118,386

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Estate of

DEBRA A. LINDSKOG.

MEMORANDUM OPINION

Appeal from Crawford District Court; KURTIS I. LOY, judge. Opinion filed May 24, 2019. Affirmed in part, reversed in part, and remanded with directions.

*Zackery E. Reynolds*, of The Reynolds Law Firm, P.A., of Fort Scott, for appellant.

*Kevin F. Mitchelson*, *Robert S. Tomassi*, and *Mary Jo Goedeke*, of Wheeler & Mitchelson, Chartered, of Pittsburg, for appellee.

Before HILL, P.J., BUSER, J., and SIDNEY R. THOMAS, District Judge, assigned.

BUSER, J.: Cederick O. Lindskog, the surviving spouse of Debra A. Lindskog, petitioned for administration of Debra's estate more than 10 years after her death. He also filed claims against Debra's estate, seeking reimbursement for certain expenses incurred before and after her death. Debra's adult son (and Cederick's stepson), Shane Rees, objected to the petition for administration and to Cederick's claims against the estate. At the conclusion of the proceedings, the district court issued letters of administration to Cederick, allowed some of Cederick's claims against the estate, and assigned title to real estate owned by Debra in one-half shares to Cederick and Rees.

Rees appeals the district court's order issuing letters of administration to Cederick and allowing his claims against Debra's estate. Rees raises three issues on appeal. First,

1

he contends Cederick's claims against the estate were barred by the Kansas nonclaim statute, K.S.A. 59-2239. Second, Rees argues that the district court erred by granting homestead rights to Cederick after his remarriage. Third, Rees asserts the district court should have denied Cederick's petition for administration and, instead, proceeded with a determination of descent.

Upon our review of the record on appeal, the parties' briefs, and listening to oral arguments, we hold: First, Cederick's claims against the estate were barred by the Kansas nonclaim statute, K.S.A. 59-2239. Second, the district court did not err by granting homestead rights to Cederick despite his remarriage. Third, the district court did not err in granting Cederick's petition for administration of Debra's estate. Finally, we deny any attorney fees. Accordingly, we affirm in part, reverse in part, and remand with directions to bar Cederick's claims against Debra's estate and vacate the lien placed on the Brookview property.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1993, Debra became the owner of a residential property located in Brookview Acres in Pittsburg, Kansas (Brookview property). About two years after purchasing the property, Debra married Cederick. Following their marriage, Debra and Cederick lived together at the Brookview property. During their marriage, the Lindskogs refinanced the property.

Debra died on June 26, 2005. Debra did not have a will when she died—she died intestate. She was survived by Cederick and her adult son, Rees. Rees is Debra's only child. When Debra died, she was the sole owner of the Brookview property. In the 10 years following Debra's death, there was no administration of her estate. Cederick continued to reside in the Brookview property, however, and he remarried in 2010. Cederick and his new wife lived together in the property following their marriage.

2

On February 24, 2016, Cederick filed a petition seeking letters of administration for Debra's estate. Notice to creditors was first published four days after the filing. In response to Cederick's petition, Rees filed written defenses and requested a determination of descent. Cederick then filed a claim to receive a $50,000 homestead allowance in lieu of his homestead rights. Cederick also petitioned for the allowance and classification of demands against Debra's estate. In this petition, Cederick alleged that he was "the surviving spouse and a creditor" of Debra's estate and he sought reimbursement for:

- $1,323 for Debra's grave headstone;
- $9,384.96 for Debra's funeral expenses;
- $2,453.07 for Debra's burial plot and vault expenses;
- $57,391 for mortgage payments and the associated interest on the Brookview property paid before June 2005;
- $61,975.90 for mortgage payments and the associated interest on the Brookview property paid June 2005 and thereafter;
- $23,255.86 for real estate taxes on the Brookview property paid after June 2005;
- $20,520.44 for insurance premiums on the Brookview property paid after June 2005; and
- $10,069.56 for repairs and maintenance expenses on the Brookview property.

The district court issued a pretrial order in June 2016. The order noted that Cederick requested administration of Debra's sole asset—the Brookview property. According to the pretrial order, Rees' trial theories included: (1) Cederick's claims against the estate were barred by the nonclaim statute; (2) Cederick's remarriage terminated his right to make a homestead claim; and (3) the district court should enter a decree of descent instead of administration.

3

The parties stipulated to certain facts before trial. In particular, the parties stipulated that Debra was the sole owner of the Brookview property when she died, Cederick was the only creditor making a claim in Debra's estate, and he waited more than 10 years to petition for an allowance and classification of demand in the estate. The parties did not stipulate to the reimbursement claims that Cederick submitted.

At a bench trial, the parties offered their stipulated facts and presented oral argument. The district court accepted the stipulated facts and admitted three exhibits into evidence. The district court also stated it would "consider everything that's been submitted" when making its determination.

After trial, the district court issued a "final ruling following submission of stipulations; abbreviated bench trial, and submission of proposed findings of fact and conclusions of law." The district court stated that, in arriving at its decision, it considered: (1) the facts and actions after Debra's death; (2) Cederick's petition for administration; (3) the petition for allowance and classification of demand; (4) Cederick's petition to receive a homestead allowance in lieu of homestead rights; and (5) Cederick's later remarriage.

In its ruling, the district court assigned title to the Brookview property in equal, one-half shares to Cederick and Rees. The district court denied Cederick's requested $50,000 homestead allowance. However, the district court allowed Cederick to continue residing on the property, ordering that the parties' assigned interests were "[s]ubject to the ongoing occupation of Cederick O. Lindskog, as his homestead." But, because Cederick remarried, the district court noted that the property was subject to a forced partition.

Finally, the district court also determined that Cederick's claims in his petition for allowance and classification of demand were timely under the nonclaim statute, K.S.A. 59-2239. As a result, the district court allowed Cederick to be reimbursed for his claims of:

4

- Debra's funeral expenses;
- Debra's grave headstone;
- Debra's burial plot and vault expenses;
- Mortgage payments and interest on the Brookview property paid after June 2005;
- Real estate taxes on the Brookview property paid after June 2005; and
- Repairs and maintenance expenses on the Brookview property.

In particular, the district court determined that the claims for Debra's funeral, headstone, and burial plot expenses were "allowed against the assets of the estate." The claims for post-death mortgage payments, real estate taxes, and repair expenses were "allowed as a lien against the real estate in any future sale."

The district court explained:

"The Court finds the expenses allowed against the real estate [have] benefited both owners, is an equitable lien, and should be paid first from the net proceeds of sale of the real estate, with the balance of the net proceeds divided 50% to Cederick Lindskog and 50% to Shane Rees. The sale of real estate referenced herein is by voluntary sale or forced partition.

"With regard to any assets which either party received after the death of Debra Lindskog in 2005, the Court considers it too late for either the estate or either party to make claim for those items. This shall include personal property in any form delivered or retained with knowledge and acquiescence."

Rees filed a motion to alter or amend judgement and for partial reconsideration. The district court denied the motion. Rees filed a timely appeal.

Before analyzing the merits, a brief mention of our standards of appellate review is necessary. The parties dispute our court's appropriate standard of review. Rees claims we should exercise de novo review because the district court decided the case based on documents and stipulated facts. But Cederick asserts an abuse of discretion standard is appropriate because the district court resolved disputed facts and considered the "various equitable interests of the parties."

When reviewing a mixed question of fact and law, an appellate court applies a bifurcated standard of review. The district court's factual findings are generally reviewed under the substantial competent evidence standard. Its conclusions of law based on those facts are subject to unlimited review. *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014).

That said, appellate courts exercise de novo review of cases decided on the basis of documents and stipulated facts. *Rucker v. DeLay*, 295 Kan. 826, 830, 289 P.3d 1166 (2012). "Where the controlling facts are based on written or documentary evidence or stipulations, this court has as good an opportunity to examine and consider the evidence as did the court below." *In re Estate of Lasater*, 30 Kan. App. 2d 1021, 1023, 54 P.3d 511 (2002). In this case, the parties did not present testimony at the bench trial. Instead, the district court ruled based on the parties' filings and stipulated facts. And, contrary to Cederick's assertion, the exhibits admitted at the bench trial are in the record on appeal for our consideration.

Additionally, the interpretation of a statute is a question of law subject to de novo review. *Heimerman v. Rose*, 307 Kan. 710, 716, 414 P.3d 745 (2018). In this case, we are required to interpret the provisions of K.S.A. 59-2239. The de novo standard governs an

appellate court's analysis of the statutory provisions in the Kansas Probate Code. *Nelson v. Nelson*, 288 Kan. 570, 578, 205 P.3d 715 (2009).

Finally, the parties dispute whether the application of equity to the circumstances of this case is appropriate. Whether an equitable remedy is available in a given situation is a question of law subject to de novo review. If an equitable remedy is available, then this court reviews the district court's application of the equitable relief for abuse of discretion. *In re Partnership of PB&R*, 52 Kan. App. 2d 871, 874, 380 P.3d 234 (2016); *Mangus v. Stump*, 45 Kan. App. 2d 987, Syl. ¶ 2, 260 P.3d 1210 (2011).

Having identified the various standards of review that are applicable to the resolution of this appeal, we will consider the merits of the issues presented.

THE DISTRICT COURT'S ALLOWANCE
OF CEDERICK'S CLAIMS AGAINST DEBRA'S ESTATE

On appeal, Rees contends that Cederick's claims made in the petition for allowance and classification of demand were barred under the nonclaim statute. Alternatively, Rees argues that the district court erred by allowing Cederick's claims against the estate because Cederick offered no evidence to prove the claims.

Cederick responds that the district court correctly found his "petition for allowance of demand was filed within the four month time limit prescribed in paragraph (a) of K.S.A. 59-2239." But Cederick also asserts that the district court granted his claims for reimbursement "[b]ased upon the equitable circumstances in this case, and not based upon K.S.A. 59-2239." Finally, Cederick states that the district court had sufficient evidence to calculate his claims against the estate.

We begin the analysis with a brief summary of the relevant Kansas statutes. An intestate estate is opened when a party petitions for letters of administration. See K.S.A. 59-2219. Under K.S.A. 59-2221, any person interested in the estate may petition for administration after the decedent's death. The Probate Code does not limit the time an heir may petition for administrating an estate in which that heir has an interest. *In re Estate of Wright*, 170 Kan. 400, 406, 227 P.2d 131 (1951). As a result, a petition to administer the estate's assets and assign each heir their proportionate share of the estate may be filed at any time. See *In re Estate of Brenner*, 52 Kan. App. 2d 71, 75-76, 362 P.3d 30 (2015).

Any person may seek a claim—or "demand" as used in the Probate Code—against an estate by filing a petition for its allowance in the proper district court. K.S.A. 59-2237(a). The verification of a claim may be "prima facie evidence of its validity unless a written defense" is filed against that claim. K.S.A. 59-2237(b). Additionally, if an interested party files a timely written defense to a petition for final settlement and accounting against a claim payment, the administrator has the burden to prove that the estate owed the debt. K.S.A. 59-2237(c).

A creditor's claim against the estate is, however, subject to the nonclaim statute. The nonclaim statute, K.S.A. 59-2239, "broadly encompasses all demands against an estate." *Nelson*, 288 Kan. 570, Syl. ¶ 16. The nonclaim statute limits the district court's authority to allow certain claims against the estate, providing:

> "No creditor shall have any claim against or lien upon the property of a decedent . . . unless a petition is filed . . . for the administration of the decedent's estate pursuant to K.S.A. 59-2219 and amendments thereto *within six months after the death of the decedent* . . . ." (Emphasis added.) K.S.A. 59-2239(1).

8

"K.S.A. 59-2239 imposes a special statute of limitations governing claims against a decedent's estate, and it operates as a complete bar to all demands against a decedent's estate that are not timely filed." *Nelson*, 288 Kan. 570, Syl. ¶ 18. Other than an exception for tort claims, the nonclaim statute bars any claim against the estate if a petition for administration is not filed within six months of death. K.S.A. 59-2239. As a result, the Probate Code recognizes that notice to creditors is unnecessary if a petition for administration is filed more than six months after the decedent's death. K.S.A. 59-709(c).

In the case on appeal, it is uncontroverted that the petition for administration was not filed within six months of Debra's death. But the district court ruled that Cederick's claims were allowed under K.S.A. 59-2239 because a petition for administration may be filed at any time and notice to creditors was promptly published. The district court reasoned that Cederick's claims were timely because Debra's estate was just opened "and our statute begins to run at that point." On appeal, Cederick also asserts that his claims were timely since they were filed within four months of the notice to creditors.

The district court and Cederick misconstrue the requirements of the nonclaim statute. In its entirety, K.S.A. 59-2239(1) states:

> "All demands, including demands of the state, against a decedent's estate, whether due or to become due, whether absolute or contingent, including any demand arising from or out of any statutory liability of decedent or on account of or arising from any liability as surety, guarantor or indemnitor, and including the individual demands of executors and administrators, shall be forever barred from payment unless the demand is presented within the later of: (a) four months from the date of first publication of notice under K.S.A. 59-2236, and amendments thereto; or (b) if the identity of the creditor is known or reasonably ascertainable, 30 days after actual notice was given, except that the provisions of the testator's will requiring the payment of a demand exhibited later shall control. *No creditor shall have any claim against or lien upon the property of a decedent* other than liens existing at the date of the decedent's death, *unless a petition is filed for the probate of the decedent's will* pursuant to K.S.A. 59-2220 and amendments thereto *or*

9

*for the administration of the decedent's estate* pursuant to K.S.A. 59-2219 and amendments thereto *within six months after the death of the decedent and such creditor has exhibited the creditor's demand in the manner and within the time prescribed by this section*, except as otherwise provided by this section." (Emphases added.)

The district court and Cederick focus on the first sentence of the nonclaim statute. This sentence requires a party to bring a claim within the later of: (1) four months from the date of first publication of notice, or (2) 30 days after actual notice if the identity of a creditor is known or reasonably ascertainable. K.S.A. 59-2239(1).

But the district court and Cederick ignore the second sentence of the nonclaim statute, which specifically bars a creditor's claim if a petition for administration is not filed within six months after the decedent's death. A plain reading of K.S.A. 59-2239(1) makes clear that for a creditor to have a valid claim against an estate, *both* conditions must be satisfied. First, a petition for administration must be filed within six months from the decedent's death. Second, the claim must be timely brought after notice was provided. Satisfaction of one requirement does not absolve noncompliance with the other.

Quite simply, although Cederick's claims were filed within four months of notice to creditors, the claims were barred because a petition for administration was not filed within six months after Debra's death.

Cederick next asserts that the district court granted his claims for reimbursement based on equitable principles, not on the statutory language of K.S.A. 59-2239. Other than stating that a district court has equitable powers in civil and probate matters, Cederick does not explain how equitable principles may circumvent or overrule the nonclaim statute.

10

It is well settled that "[g]enerally, equitable remedies are not available if there is an adequate remedy at law." *Nelson*, 288 Kan. at 597. Under this principle, claims must first be made against a decedent's personal representative and a remedy at law must be unavailable before equitable relief is allowed. 288 Kan. at 597. To recover expenses incurred as a result of Debra's death—the funeral, headstone, and burial plot costs—Cederick could have filed a timely petition for administration and made his claims against the estate. As our Supreme Court has stated:

> "When one claims property of an estate, the fact that an estate does not exist does 'not relieve [a family member] or any other person having a claim upon the property of [the] estate from having an administrator appointed' under the provisions of K.S.A. 59-2239 and making a claim against the estate." 288 Kan. at 598 (quoting *Gebers v. Marquart*, 166 Kan. 604, 609-10, 203 P.2d 125 [1949]).

This issue is resolved by a plain reading of K.S.A. 59-2239(1), without resorting to application of general equitable remedies to nullify the clear statutory language. Cederick's claims against the estate were barred by the nonclaim statute. Accordingly, the district court erred by ordering Cederick to be reimbursed for his claims. That portion of the district court's ruling is reversed.

Turning to the real estate expenses that Cederick incurred after Debra's death—the mortgage payments, taxes, and repair costs—because Cederick remarried, the Brookview property became subject to partition. See K.S.A. 59-402. If and when a partition action is brought, the district court will have the "full power to make any order . . . that may be necessary to make a just and equitable partition between the parties." K.S.A. 60-1003(d); see also *Denton v. Lazenby*, 255 Kan. 860, Syl. ¶ 3, 863, 879 P.2d 607 (1994) (In partition proceedings, a cotenant has a right to contribution for improvements and other expenses, which arises from principles of equity.).

11

Although Cederick's claims for real estate expenses against Debra's estate are barred by the nonclaim statute, Cederick may pursue reimbursement as part of any partition proceeding. Given that this appeal does not involve a partition action, however, we make no ruling and express no opinion on whether such a claim for reimbursement would be appropriate under the circumstances.

Given our holding reversing as a matter of law the district court's allowance of Cederick's claims, we decline to address Rees' alternative argument that Cederick failed to prove his claims with sufficient evidence.

THE DISTRICT COURT'S GRANTING OF HOMESTEAD RIGHTS TO CEDERICK

Rees next contends the district court erred by conditioning the parties' interest in the Brookview property on "the ongoing occupation of Cederick . . . as his homestead." Rees asks our court to remove Cederick's "occupancy rights granted as a homestead right" because he asserts Cederick's homestead rights expired when he remarried.

Cederick responds that, when using the word "homestead," the district court was only ruling that Cederick could remain in the residence until the property was partitioned. Cederick asserts that no homestead rights were granted to him by the district court.

Under Kansas law, the decedent's surviving spouse is entitled to the homestead. K.S.A. 2018 Supp. 59-6a215. A homestead includes 160 acres of land outside, or one acre within, the limits of an incorporated city, or a manufactured home or mobile home, occupied by the decedent and his or her family as a residence and continued to be occupied by the surviving spouse. K.S.A. 59-401. The surviving spouse's homestead interest does not affect the homestead property's title. Instead, the title to the homestead property descends in the same manner as the decedent's other property. K.S.A. 59-401.

12

After the inventory and valuation is filed, the surviving spouse may petition the court to set apart the homestead. If proven that a homestead exists, the district court must set it apart. The property set apart is delivered by the administrator to the surviving spouse, but the title of the homestead must be included in the final decree of distribution. K.S.A. 59-2235. In lieu of the homestead, the surviving spouse may elect to receive a homestead allowance of $50,000. K.S.A. 2018 Supp. 59-6a215. "The homestead or homestead allowance is exempt from and has priority over all demands against the estate." K.S.A. 2018 Supp. 59-6a215.

In addition to the surviving spouse's right to set apart the homestead, the court must also consider the homestead exemption. "The homestead exemption was established for the benefit of the family and society 'to protect the family from destitution, and society from the danger of her citizens becoming paupers.'" *Redmond v. Kester*, 284 Kan. 209, 212, 159 P.3d 1004 (2007) (quoting *Morris v. Ward*, 5 Kan. 239, 244 [1869]). Kansas courts thus liberally construe the "homestead provision in order to safeguard its humanitarian and soundly social and economic purposes." *State, ex rel., v. Mitchell*, 194 Kan. 463, 466, 399 P.2d 556 (1965).

The homestead exemption is found in the Kansas Constitution, and it is carried out by the Legislature in various statutory provisions. Kan. Const. art. 15, § 9; K.S.A. 59-401 et seq. (probate code); K.S.A. 60-2301 et seq. (code of civil procedure). In general, the homestead exemption—which protects homes from forced sale—precludes encumbrances and liens from attaching to the homestead property. *Chaney v. Armitage*, 54 Kan. App. 2d 658, 662, 401 P.3d 1026 (2017). In probate proceedings, the homestead is protected "from distribution" and "from the payment of the debts of the decedent" except to: (1) pay taxes on the homestead; (2) pay obligations contracted for to purchase the homestead; (3) pay obligations contracted for to erect improvements on the homestead; or (4) pay any lien on the homestead given by the consent of both husband and wife. K.S.A. 59-401.

13

As explained in K.S.A. 59-401, the surviving spouse's homestead interest includes two benefits: (1) the homestead is exempt from compulsory division and distribution for a time and, (2) the homestead generally may not be sold to pay the decedent's debts. Long-standing Kansas Supreme Court precedent and the Probate Code address how a surviving spouse's subsequent remarriage affects these homestead rights.

The Probate Code contemplates when the homestead may be distributed through a forced partition. K.S.A. 59-402 provides: "The homestead shall not be subject to forced partition unless the surviving spouse remarries, nor until all the children arrive at the age of majority." Under this provision, a coowner in a tenancy in common created by the decedent's death may not forcibly partition the homestead unless the surviving spouse remarries and there are no minor children. *Curry v. Perney*, 194 Kan. 722, 725, 402 P.2d 316 (1965).

Although a coowning heir may force partition of the homestead once the surviving spouse remarries, the homestead still remains protected from a forced sale to pay the decedent's debts. Once established that a homestead interest in property exists, there is a presumption that the homestead continues until the homestead is abandoned. "Two tests must be met before a homestead interest may be destroyed or abandoned: (1) There must be a removal from the property and (2) there must be an intent not to return." *Chaney*, 54 Kan. App. 2d at 663.

More than 125 years ago, our Supreme Court determined: "We do not think that the marriage of the widow of the decedent, where she with her husband continues to occupy the homestead the same after marriage as before, operates to remove the provisions of the homestead law exempting it from the debts and liabilities of the deceased debtor." *Brady v. Banta*, 46 Kan. 131, 136-37, 26 P. 441 (1891). The court, therefore, held that if the surviving spouse remarries and continues to reside on the

14

homestead, it remains exempt from the payment of debts, and the exemption continues after a partition between the surviving spouse and children. 46 Kan. at 136-38.

Because the surviving spouse retains some homestead rights after remarriage and partition, "the homestead character of land is not necessarily destroyed by partition of the same." *Towle v. Towle*, 81 Kan. 675, 687, 107 P. 228 (1910). "In case the widow marry and all the children arrive at the age of majority, and a division of the homestead is had, the half set off to the widow would still be her homestead." 1 Bartlett, Kansas Probate Law and Practice § 228, p. 285 (rev. ed. 1953). This set-off portion is the surviving spouse's homestead and is not subject to the payment of the debts of the decedent or the surviving spouse. *Sawin v. Osborn*, 87 Kan. 828, 829-31, 126 P. 1074 (1912).

Turning to the case on appeal, Cederick filed a petition for a homestead allowance of $50,000 in lieu of the homestead. The district court denied this petition but ruled that Cederick "declared through his actions a desire to consider [the Brookview property as] his homestead."

Rees argues that Cederick never filed a petition to set aside the homestead. But Cederick could not file such a petition before the district court's final decision because an inventory was never filed. See K.S.A. 59-2235. Moreover, for over 10 years, the parties have operated as if the homestead property was set aside for the surviving spouse. The district court did not err by finding that Cederick occupied the Brookview property as a homestead following Debra's death. See *Carnes v. Meadowbrook Executive Bldg. Corp.*, 17 Kan. App. 2d 292, Syl. ¶ 4, 836 P.2d 1212 (1992) ("A court acting within its equitable powers is not required to give the specific relief requested but may tailor the relief as justice demands under all of the facts of the case.").

The Brookview property is subject to a forced partition because Cederick remarried and there are no minor children. But the Probate Code does not contemplate

15

when a surviving spouse's right to occupy the homestead terminates—upon remarriage or after partition. We conclude that a surviving spouse's right to occupy the homestead property does not terminate until after forced partition, and not immediately upon remarriage. See *Sawin*, 87 Kan. 828, Syl. ¶ 3 (holding that, in a partition action, it was proper "to allow the widow to occupy the residence on the share allotted to her cotenants for a reasonable time and until a building was removed and a home made on the portion allotted to her").

This rule better safeguards the homestead provision's humanitarian and economic purposes. The remarried surviving spouse can reside in the property until forced partition, while the coowning heirs are unaffected. As the court in *Hazelbaker v. Reber*, 123 Kan. 131, 136, 254 P. 407 (1927) recognized: "The existence of a homestead interest in one of the cotenants may altogether prevent, for a time, any partition *in invitum*; but where the right to partition is absolute, the fact that one of the cotenants occupies the property as a homestead is of no consequence . . . . [Citations omitted.]"

Rees asserts that title to the Brookview property should have been assigned "free of any homestead rights by Cederick." It is unclear what homestead rights Rees complains were granted to Cederick. But contrary to Rees' all-encompassing argument, Cederick's remarriage does not eliminate the provisions of the homestead law exempting the homestead from the debts of the deceased.

In summary, Rees may force partition of the Brookfield property at any time because Cederick remarried. Until the Brookfield property is forcibly partitioned, however, Cederick may occupy the property as his homestead. Cederick's half interest in the property is exempt from the payment of his and Debra's debts, other than those debts specified in K.S.A. 59-401. Cederick has some homestead rights in the property despite his remarriage, none of which affect Rees' ability to force partition.

16

We hold the district court did not err by conditioning the parties' interests in the Brookview property on "the ongoing occupation of Cederick . . . as his homestead."

## THE DISTRICT COURT'S GRANTING OF
## LETTERS OF ADMINISTRATION TO CEDERICK

Finally, Rees contends the district court should have denied Cederick's petition for letters of administration. He claims the case should have proceeded under the "laws of intestate succession through the use of the Determination of Descent procedure." Cederick responds that the district court properly allowed him to administer the estate.

One alternative to probate administration is a proceeding to determine descent. Under K.S.A. 59-2250, any person interested in an estate or claiming an interest in the decedent's property may petition the district court to determine the descent of the property under the laws of intestate succession. In the absence of a will, this procedure may be used when:  (1) the decedent has been dead for more than six months, and (2) no petition for administration has been filed in Kansas or administration occurred without determining the descent of the property. K.S.A. 59-2250.

After a hearing and proof of the petition, the district court must issue a decree assigning the property to the persons entitled to it under the law of intestate succession. K.S.A. 2018 Supp. 59-2251. The district court's decree of descent does not create title, but only declares who acquired the title. *Carter v. Carter*, 187 Kan. 74, 81, 353 P.2d 499 (1960). "'The function of the statute is not to determine claims or controversies affecting the distributive share which would otherwise pass under the law of intestate succession.' [Citation omitted.]" 187 Kan. at 81. Instead, a determination of descent "'releases the title of the heirs from the condition of administration and furnishes the heirs with legal evidence to establish title.' [Citation omitted.]" 187 Kan. at 81.

17

Nothing in K.S.A. 59-2250 requires parties to use a determination of descent proceeding instead of probate administration when a determination of descent procedure could be used. Instead, K.S.A. 59-2250 provides that any interested person "may" petition the district court to determine the descent of property. As discussed earlier, an heir may petition for administration at any time. See *In re Estate of Brenner*, 52 Kan. App. 2d at 75-76. A determination of descent is only an alternative to administering an estate, and, when applicable, an interested party may choose to petition for administration or to determine descent.

Because Cederick filed a petition for administration before Rees petitioned to determine descent, Rees' petition was barred by K.S.A. 59-2250(c). While a proceeding to determine descent may be more prudent since Cederick's claims are barred under the nonclaim statute, administration was proper. An heir has a right to "petition for the administration of an estate to make sure all of the assets of the estate are marshaled and distributed in accordance with the laws of intestate distribution." 52 Kan. App. 2d at 78.

Rees argues that administration should have been denied because there was "simply no need for estate administration." He relies on the dissent in *In re Estate of Brenner*. In *In re Estate of Brenner*, the decedent's daughter petitioned for administration of the estate more than six months after the decedent's death. A son objected to the petition, claiming there were no assets in the estate and the daughter's petition was really a claim against the estate barred by the nonclaim statute.

The dissent in *In re Estate of Brenner* would have found that the district court correctly denied the petition for administration because the estate lacked substantial assets to administer. 52 Kan. App. 2d at 85 (Pierron, J., dissenting). The dissent noted the only assets that could be administered required the daughter to make claims to bring the property back into the estate. Therefore, the petition for administration was really a claim against the estate. Because this claim would be barred by the nonclaim statute, the dissent

18

concluded that the estate did not have substantial assets to administer. 52 Kan. App. 2d at 82-84 (Pierron, J., dissenting).

Rees' argument based on the dissent in *In re Estate of Brenner* is not convincing. Unlike the decedent's estate in *In re Estate of Brenner*, Debra's estate contained at least one substantial asset—the Brookview property—that could be administered. As a result, the dissent's reasoning in *In re Estate of Brenner* is not applicable because there is property to administer and assign without the need to make a time-barred claim.

We hold the district court did not err by granting letters of administration to Cederick.

APPELLATE ATTORNEY FEES

After oral argument, Rees filed a timely motion for appellate attorney fees pursuant to Supreme Court Rule 7.07(b) (2019 Kan. S. Ct. R. 50) and K.S.A. 59-1504. In response, Cederick opposed the motion, asserting that K.S.A. 59-1504 did not apply to an award of attorney fees relating to contested intestate matters. In his response, Cederick also stated a so-called "counterclaim" seeking attorney fees pursuant to Supreme Court Rule 7.07(c) because Rees "frivolously appealed for attorney's fees."

At the outset, Cederick's counterclaim for appellate attorney fees incurred in responding to Rees' motion for appellate attorney fees is untimely under Supreme Court Rule 7.07(b)(2) (2019 Kan. S. Ct. R. 51), which provides that "[a] motion for attorney fees on appeal must . . . be filed no later than 14 days after oral argument." Cederick's counterclaim was filed on December 6, 2018. Oral argument in this appeal was on November 13, 2018. Accordingly, because Cederick's counterclaim for appellate attorney fees was untimely, it is denied.

19

Next, we consider Rees' motion for appellate attorney fees. Generally, "[a]n appellate court may award attorney fees for services on appeal in a case in which the district court had authority to award attorney fees." Supreme Court Rule 7.07(b) (2019 Kan. S. Ct. R. 51); *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013) (A court may not award attorney fees absent statutory authority or an agreement by the parties.). In certain situations, attorney fees may be awarded in probate cases under K.S.A. 59-1504. This statute provides:

"Any heir at law or beneficiary under a will who, in good faith and for good cause, successfully prosecutes or defends [an] action for the benefit of the ultimate recipients of the estate may be allowed his or her necessary expenses, in the discretion of the court, including a reasonable attorney's fee." K.S.A. 59-1504.

Under K.S.A. 59-1504, four requirements must be satisfied before attorney fees may be recovered: (1) The party must be an heir at law or a beneficiary under a will; (2) the party must have exercised good faith and have had a good cause for incurring the fees; (3) the party must be successful in the appeal; and (4) the appeal must ultimately benefit the recipients of the estate. If these requirements are met, this court may exercise its discretion to allow fees. *In re Estate of Gardiner*, 29 Kan. App. 2d 158, 163, 23 P.3d 902 (2001).

Contrary to Cederick's suggestions, attorney fees under K.S.A. 59-1504 are not limited to actions involving the probate of a will. Instead, K.S.A. 59-1504 allows an heir at law to obtain attorney fees. The phrase "heir at law" refers to one who takes property by intestate succession. See *Baugh v. Baugh*, 25 Kan. App. 2d 871, ¶ 2, 973 P.2d 202 (1999). As a result, attorney fees may be awarded in an action involving an intestate estate. See *In re Estate of Trembley*, No. 100,871, 2009 WL 5206221, at *13-14 (Kan. App. 2009) (unpublished opinion).

20

Applying the four factors of K.S.A. 59-1504 to this appeal, it is apparent that the third factor—the party must be successful in the appeal—has not been fully satisfied in this appeal. As is apparent, our holding is a split decision for the parties. Under these circumstances, Rees has not shown his entitlement to an award of appellate attorney fees. Moreover, assuming that K.S.A. 59-1504 does apply under these circumstances, we would decline to exercise our discretion to award attorney fees to Rees given the unique issues and respective merits of both parties' arguments. See *In re Estate of DeWitt*, No. 101,966, 2010 WL 2545660, at *5 (Kan. App. 2010) (unpublished opinion). Accordingly, we deny Rees' motion.

Affirmed in part, reversed in part, and remanded with directions to bar Cederick's claims against Debra's estate and vacate the lien placed on the Brookview property.